UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM D. GLUCK,<br><br>       Plaintiff,<br><br>       v.<br><br>STEPHEN W. FILLO, WARBURG PINCUS<br>LLC, WARBURG PINCUS CAPITAL CORP,<br>and WARBURG PINCUS & CO.,<br><br>       Defendants. | CIVIL ACTION NO. 05-10659-EFH |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## (ORAL ARGUMENT REQUESTED)

Defendants Stephen W. Fillo, Warburg Pincus LLC, Warburg Pincus Capital

Corp. and Warburg Pincus & Co. (collectively, "Defendants") submit this Memorandum of Law

in support of their Motion to Dismiss the Verified Complaint (the "Complaint") of William D.

Gluck ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Over twenty years ago, Plaintiff was employed by a company called Nova

Robotics, Inc. ("Nova"), which was liquidated in 1984. Plaintiff apparently blames his alleged

inability to obtain suitable employment since the demise of Nova on the Defendants, as

evidenced by an exchange of correspondence dating back to 1986, and has nursed his purported

grievance ever since. Remarkably, however, Plaintiff waited until April of this year to seek legal

redress for his alleged injuries. Plaintiff's stale claims are deficient for many reasons and the

Court should dismiss them.

In the first place, the Complaint fails properly to allege subject matter jurisdiction, and, in fact, no such jurisdiction exists. Presumably, Plaintiff intends to premise subject matter jurisdiction on diversity. As set forth below, however, complete diversity is lacking. Because there is no other jurisdictional basis, Plaintiff's claims may not be heard in this Court.

The Complaint must be dismissed for at least two additional reasons. First, each of the four counts asserted is untimely and barred by the applicable statute of limitations. Though Plaintiff alleges that he was unaware until April 2003 of certain discussions among Defendants and Plaintiff's brother and among Defendants and Plaintiff's former business associate which constitute the basis for Plaintiff's claims, the Complaint makes clear that Plaintiff has been cognizant of his potential claims since 1986 at the latest and has simply failed to take legal action till now. The statute of limitations, therefore, expired long ago on Plaintiff's almost twenty-year-old claims.

Further, even if the Complaint was timely brought, it fails adequately to allege the elements of the claims it purports to assert. The defamation claim fails to identify an actionable defamatory statement; the tortious interference claim does not adequately allege the requisite motive or a relationship that can form the basis for such a claim; the contract claim sets forth no contract that was purportedly breached and no consideration that was exchanged; and the fraudulent inducement claim fails to allege any element of fraud with the heightened particularity required for such claims.

For all of these reasons, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

1.    Plaintiff William Gluck is a resident of the Commonwealth of Massachusetts. (Complaint ¶ 1.) He was employed by Nova in an executive capacity, beginning

in 1983 and ending in 1984, at or around the time that Nova was liquidated.  (Id. ¶¶ 12, 31.)

Sometime prior to his employment at Nova, Plaintiff was employed by McKinsey & Company

("McKinsey"), a management consulting firm. (Id. ¶ 13.)

       2.    Plaintiff was selected for the position at Nova by defendant Warburg

Pincus Capital Corp., a venture capital fund that had invested in Nova.  (Id. ¶ 12.)  Warburg

Pincus Capital Corp. was reorganized as a Delaware limited partnership named Warburg, Pincus

Associates, L.P. in April 1986.  Warburg, Pincus Associates, L.P. made its last distribution to its

limited partners in September 1997, and it was liquidated in December 1999.  (See Affidavit of

Scott Arenare dated September 29, 2005 filed herewith ("Arenare Aff.") ¶ 3.)

       3.    Warburg Pincus Capital Corp. was affiliated with and managed by the

predecessor to defendant Warburg Pincus LLC.  (Id. ¶ 3.)

       4.    Defendant Warburg Pincus & Co. is a general partnership organized under

the laws of the State of New York.  (Id. ¶ 2.)  Warburg Pincus & Co. was the general partner of

Warburg, Pincus Associates L.P.  (Id. ¶ 3.)

       5.    Defendant Steven Fillo is a former managing director of Warburg Pincus

LLC.  (Complaint ¶ 6.)  Fillo had involvement in the Nova investment and the hiring of Plaintiff.

(Id. ¶ 17.)

       6.    Dalip Pathak, a partner of Warburg Pincus & Co., is a United States

citizen. (See Declaration of Dalip Pathak dated September 28, 2005 filed herewith ("Pathak

Decl.") ¶¶ 1, 2.)  He is also a citizen and non-domiciled resident of the United Kingdom.[1]  (Id. ¶¶

2, 5.)  He has not resided in the U.S. for the last twelve years.  (Id. ¶¶ 4, 5.)  He moved to the

U.K. in 2002, and has resided there continuously since with his family.  (Id. ¶ 5.)  Mr. Pathak

owns a home and pays taxes in the U.K., is registered to vote in the U.K., has a U.K. driver's

---

[1] Mr. Pathak is a domiciliary of India.  (Pathak Decl. ¶ 5.)

license and belongs to social organizations there. (Id.) He has no plans to move back to the U.S. (Id.)

7.    Plaintiff alleges that since the demise of Nova in 1984, he has been unable to find suitable employment. (Complaint ¶¶ 36, 43.) Plaintiff blames this inability to obtain suitable employment for more than twenty years on statements made by Defendants about him and his employment at Nova. (Id. ¶ 36.) He does not set forth in the Complaint, however, with any particularity what those statements were or when they were made.

8.    Plaintiff has sporadically sought to communicate and correspond with Defendants about the demise of Nova and his employment prospects during the course of the more than twenty years that have elapsed since his employment ended. (Id. ¶¶ 35, 44.) Plaintiff asserts that certain of this correspondence, and in particular a letter from Fillo to Plaintiff dated July 2, 1986 (the "July 2 Letter") and Plaintiff's response dated July 8, 1986 (the "July 8 Letter"), constituted some form of agreement settling these issues. (Id. ¶¶ 34-36.)

9.    Plaintiff further alleges that he learned for the first time in April 2003 of discussions between Defendant Fillo and Plaintiff's brother Fred Gluck (a former senior partner and Managing Partner of McKinsey), and between defendant Fillo and Ron Daniel (a former Managing Partner and current senior partner at McKinsey). (Id. ¶ 37.) Plaintiff alleges that statements made by Fillo during these discussions were at odds with alleged representations made in the July 2 Letter. (Id.)

## ARGUMENT

**I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION.**

Plaintiff has made no allegations regarding the basis for subject matter jurisdiction. Fed. R. Civ. P. 8(a)(1). The Court can dismiss Plaintiff's Complaint on this basis

alone. See, e.g., Rodriguez v. SK&F Co., 833 F.2d 8, 9 (1st Cir. 1987) (affirming dismissal where "[o]n the face of the complaint, the plaintiff has failed to allege grounds upon which to support either his conclusory allegation of diversity jurisdiction or federal question jurisdiction."). Aside from this pleading deficiency, subject matter jurisdiction is in fact lacking.

### A.    The Standard for Diversity Jurisdiction

As each of the claims presented is a state law claim and no claims arising under federal law are made, Plaintiff presumably premises jurisdiction on diversity of citizenship. This Court has original jurisdiction of a civil action where the amount in controversy exceeds $75,000 and the controversy is between:

> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state . . . as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a). It is well settled that § 1332 requires "complete" diversity of citizenship; that is where "no plaintiff is a citizen of the same state as any defendant." Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005) (affirming dismissal of action for lack of federal subject matter jurisdiction) (citing Strawbridge v. Curtiss, 7 U.S. 267 (1806)). Here, diversity is absent.

### B.    Diversity Jurisdiction Is Lacking.

While Plaintiff has failed to allege that this Court has subject matter jurisdiction based on 28 U.S.C. § 1332, he does make certain cursory allegations that appear to relate to the citizenship of each of the Defendants and appear to be designed to demonstrate that diversity jurisdiction exists by showing that no defendant is located in Massachusetts, the state where Plaintiff resides. In particular, Plaintiff alleges that "Defendant Warburg Pincus LLC . . . is

incorporated in the State of New York with its headquarters located at 466 Lexington Avenue

New York, NY 10017" and that "Defendant Warburg Pincus & Co. [has] headquarters located at

466 Lexington Ave. New York, NY 10017."  (Complaint ¶¶ 2, 4.)

Defendants Warburg Pincus LLC and Warburg Pincus & Co. are not

corporations, however, but rather a limited liability company and a general partnership,

respectively.  In the case of "an artificial entity" other than a corporation, the Supreme Court has

made clear that "diversity jurisdiction in a suit by or against the entity depends on the citizenship

of all the members." Carden v. Arkoma Assocs., 494 U.S. 185, 195, 110 S. Ct. 1015, 1021, 108

L. Ed. 2d 157 (1990) (internal citation and quotations omitted); see also Kier Bros. Inv. Inc. v.

White, 943 F. Supp. 1, 2 n.2 (D.D.C. 1996) ("For diversity purposes, a general partnership is a

citizen of every state in which its general partners are citizens."); Rolling Greens MHP, L.P. v.

Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) ("The federal appellate

courts that have answered this question have all answered it in the same way: like a limited

partnership, a limited liability company is a citizen of any state of which a member of the

company is a citizen.").  "For diversity purposes, state citizenship is ordinarily equated with

domicile." Izquierdo v. Denton Constr. Co., No. 94-1633, 1994 WL 584544, at *2 (1st Cir. Oct.

25, 1994) (unpublished op.).

The domicile of Dalip Pathak, a partner of defendant Warburg Pincus & Co.,

precludes complete diversity.  Although he is a United States citizen, he is also a citizen and a

resident of the United Kingdom.  He has not resided in the U.S. for the last twelve years.  He

moved to the U.K. in 2002, and has resided there continuously since with his family.  He owns a

home and pays taxes in the U.K., is registered to vote in the U.K., has a U.K. driver's license and

belongs to social organizations there.  He has no plans to move back to the U.S. See, e.g., id. at

*2 n.1 (listing the following factors for determining domicile: "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment").

As a person who is both a U.S. and U.K. citizen and who resides in the U.K., this partner of Warburg Pincus & Co. is not domiciled in any U.S. state and is therefore considered "stateless" for purposes of establishing diversity of citizenship. Falken Indus. Ltd. v. Johansen, 360 F. Supp. 2d 208, 210-11 (D. Mass. 2005) (holding that where defendant held dual U.S. and French citizenship, but was "domiciled in France, where, *inter alia*, he resides, is employed and votes," defendant was a "'stateless' American citizen" for diversity purposes). His status as a stateless U.S. citizen means that none of the provisions of § 1332(a) actually allow for the Court's exercise of diversity jurisdiction over this case.[2] "The Supreme Court has ruled that 'in order to be a citizen of a State within the meaning of the diversity statute, a natural person must be both a citizen of the United States and domiciled within the State.'" Id. (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828, 109 S. Ct. 218, 220, 104 L. Ed. 2d 893 (1989)). Thus, while he is a U.S. citizen, "he is not domiciled, within the meaning of § 1332(a)(1), in any state of the United States." Id. At the same time, though he is a dual citizen and a permanent resident of the U.K., the U.S. citizenship means that he cannot be considered a citizen or a subject of a foreign state under § 1332(a)(3) because "Courts have increasingly held that 'for a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U.S.C. 1332.'" Id. (internal citations omitted). Therefore, the existence of a stateless U.S. citizen among the partners of an artificial entity named in a suit premised on

---

[2]    Though Plaintiff has not stated which provisions of § 1332(a) are alleged to apply here, it is assumed that neither § 1332(a)(2) (which applies where a plaintiff sues only foreign citizens) or § 1332(a)(4) (which pertains only when a foreign state is the plaintiff) can be the alleged basis for diversity jurisdiction.

diversity jurisdiction precludes the suit from proceeding against that entity. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 69 (2d Cir. 1990).

Accordingly, the Complaint should be dismissed for lack of subject matter jurisdiction.

## II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED AND BECAUSE EACH CLAIM IS TIME-BARRED.

Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted" when it appears "that upon any set of facts which may be inferred from the complaint the plaintiff will be unable to recover." Danio v. Emerson Coll., 963 F. Supp. 61, 62 (D. Mass. 1997) (citing Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996)). A complaint cannot withstand a motion to dismiss if the plaintiff fails to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Cooperman v. Individual, Inc., 171 F.3d 43, 47 (1st Cir. 1999) (internal citation and quotation omitted). The strictures of Rule 12(b)(6) apply equally to claims for which the statute of limitations has run: "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).

Each of Plaintiff's claims fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.    The Defamation Claim Should Be Dismissed.

Count I alleges that "By their actions defendants Fillo and Warbug *[sic]* defamed plaintiff Gluck" and that "[a]s a result of the defamation by Fillo and Warburg, Gluck was harmed in an amount that exceeds Twenty Million Dollars." (Complaint ¶¶ 45-46.) Plaintiff's

defamation claim fails both because it is untimely and because Plaintiff has failed to allege the necessary elements of such a claim.

### 1.    The Statute of Limitations for Plaintiff's Defamation Claim Has Expired.

In Massachusetts, the statute of limitations for defamation is three years. G.L. c. 260, § 4.[3] The general rule is that "the cause of action accrues and the statutory period begins to run on the date of publication." Mourad v. Boston Globe Newspaper Co., No. 01-P-1382, 2003 WL 22902621, at *1 (Mass. App. Ct. Dec. 9, 2003) (unpublished op.). There is a limited discovery exception to the three-year rule whereby "a cause of action for the redress of an inherently unknowable wrong does not accrue until the harm becomes known, or in the exercise of reasonable diligence, should have become known, to the injured party." Catrone v. Thoroughbred Racing Ass'ns of N. Am. Inc., 929 F.2d 881, 885 (1st Cir. 1991) (internal quotations and citations omitted); see id. at 886 ("Under Massachusetts law, a cause of action accrues on the happening of an event likely to put the plaintiff on notice. . . . The notice required is not notice of every fact which must eventually be proved in support of the claim. . . . The notice envisioned under the discovery rule arises on acquisition of the requisite knowledge that an injury has occurred.") (internal citations and quotations omitted).

Plaintiff makes no allegation as to the specific time when the supposed defamatory statements were purportedly published. He does allege generally, however, that the alleged statements were made "at or following the time of Nova's failure," which occurred in

---

[3]    It appears that Plaintiff, having brought his action before this Court, intends to assert that Massachusetts law applies to each of the state law claims. The Defendants assume for purposes of this Motion only that Massachusetts law applies. We note, however, that under the laws of New York, New Jersey and Connecticut, Plaintiff's claims would also be deficient.

1984. (Complaint ¶ 37.) Obviously, statements made 21 years ago would no longer be actionable under the publication standard.

Plaintiff endeavors to avoid the obvious staleness of his claims by relying on the discovery exception to the statute of limitations. He asserts that he learned of the alleged defamatory statements (including those made to Plaintiff's brother, Fred Gluck) "for the first time" in 2003. (Id.) Even if this proved to be the case, the Complaint itself makes clear that Plaintiff's alleged harm -- the inability to obtain suitable employment -- was known to him in the mid 1980's and thus his claim is time-barred. In this regard, Plaintiff specifically alleges that "following Nova's failure, Gluck was unable to secure an appropriate permanent position in any field -- consulting, management, or venture capital." (Complaint ¶ 32.)

Moreover, the Complaint also makes clear that, with any "reasonable diligence," the alleged defamation should have become known to Plaintiff many years ago. Catrone, 929 F.2d at 885. Thus,

- Gluck allegedly sought assurances prior to Nova's downfall that Defendants "would sort out and air the facts of Nova at a later and calmer time lest Gluck be harmed by the attack on his capabilities and performance and by his acquiescence in a reduction in his executive duties." (Complaint ¶ 29.)

- Initially, Warburg allegedly "refused to honor Gluck's requests that it clear the record with the venture capitalists who had observed Nova's final days." (Complaint ¶ 32.)

- Ultimately, on July 2, 1986, Fillo sent the letter Plaintiff refers to as the "'Set the Record Straight' Letter Agreement," which Plaintiff indicates he had sought out of concern for what might otherwise have been said or thought about the demise of Nova and the resulting impact on his career. (Complaint ¶ 35.)

- Nonetheless, despite the July 2 Letter, "Gluck's career never recovered from Warburg's and Fillo's actions and from the failure of Nova Robotics. (Complaint ¶ 36.)

00085098.DOC /

Accordingly, it is clear from the Complaint itself that: (i) Plaintiff was concerned as early as 1984 about the impact Nova's failure would have on his career; (ii) Plaintiff believed as early as 1986 that he had some claims to be redressed or settled against some or all of the Defendants based on their actions or statements following the demise of Nova; (iii) Plaintiff was unable to obtain satisfactory employment for nearly twenty years; and (iv) Plaintiff made no effort to determine why he was unable to obtain employment, including contacting his own brother about the matter. Plainly, Plaintiff's claims, if there be any, were not "inherently unknowable," and Plaintiff cannot successfully rely on the limited discovery exception to overcome the long-expired statute of limitations for his defamation claim. Flynn v. Assoc. Press, 401 Mass. 776, 781, 519 N.E.2d 1304, 1307 (1988).

> ### 2.    The Defamation Claim Fails Because Plaintiff Has Not Identified a Defamatory Statement.

In order to state a claim for defamation, Plaintiff must plead that: (i) Defendants published to a third party a statement of fact of or concerning Plaintiff; (ii) that such statement was defamatory, meaning it could damage Plaintiff's reputation in the community; (iii) that Defendants were at fault in making the statement; and (iv) that the statement either caused Plaintiff's economic loss or is actionable without proof of economic loss. Stanton v. Metrocorp, Inc., 357 F. Supp. 2d 369, 373-74 (D. Mass. 2005). Statements of opinion are constitutionally protected and thus are not actionable. Id. at 374 n.7; Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379, 522 N.E.2d 959, 962 (1988). Here, Plaintiff has alleged no false and defamatory statement.

At the outset, it is obvious that Plaintiff has not alleged the words of any particular statement claimed to be defamatory. Instead, Plaintiff makes the general assertion that

> [i]n these meetings [with Ron Daniel and Fred Gluck], Fillo
> criticized the job performance of Gluck at Nova. In discussion

> with Daniel, Fillo also dismissed Gluck's claim that Nova had
> been materially misrepresented to Warburg, Fillo and Gluck. Both
> the allegation of poor performance and the denial of the material
> misrepresentation were at odds with the "Set the Record Straight"
> Letter Agreement.

(Complaint ¶ 37.) Massachusetts state courts apply a heightened pleading standard to

defamation claims, granting motions to dismiss where the specific alleged defamatory language

is not pleaded. See, e.g., Sumadi v. Liberty Mut. Ins. Co., No. 03-P-866, 2004 WL 2185424, at

*1-2 (Mass. App. Ct. Sept. 28, 2004) (unpublished op.) (holding defamation claim to "stricter

standard for [pleading] complaints" and thus dismissing claim where "plaintiff has not set forth

the false statement nor … allege[d] facts establishing the essential element of publication to a

third party") (citation omitted). While Defendants recognize that federal courts in Massachusetts

apply federal notice pleading standards to defamation claims,[4] Plaintiff's claims do not even

meet that bar.[5]

    Plaintiff first makes the vague and general allegation that defendant Fillo

"criticized the job performance of Gluck at Nova." (Complaint ¶ 37). Even if this were true,

statements evaluating a person's work product are "nonactionable statements of opinion." Judd

v. McCormack, 27 Mass. App. Ct. 167, 174, 535 N.E.2d 1284, 1289 (1989) (internal quotations

and citations omitted). Thus, the allegation that Fillo criticized Plaintiff's job performance is not

actionable.

    Nevertheless, Plaintiff further asserts that the alleged job performance criticism

was at odds with the July 2 Letter. While this assertion, even if true, would not alter the above

---

[4]     See Andresen v. Diorio, 349 F.3d 8, 16-17 (1st Cir. 2003).

[5]     Other federal courts applying the notice standard have recognized that, "[t]here is a significant exception to
the general rule of liberally construing a complaint in applying rule 12(b)(6); when the complaint attempts
to state a 'traditionally disfavored' cause of action, such as defamation, courts have construed the complaint
by a stricter standard." Lewis v. Herrman's Excavating, Inc., No. 00-4036, 2000 WL 33407060, at *4 (D.
Kan. Nov. 2, 2000) (unpublished op.) (quoting 5A Wright & Miller, Fed. Prac. & Proc. § 1357 (2005)).

-12-

analysis, the July 2 Letter itself demonstrates that Fillo's alleged criticism of Plaintiff's

performance is not contrary to any statements made in that letter. The July 2 Letter does not

state that Plaintiff's performance was satisfactory, and makes no representation that Fillo will not

offer an opinion as to Plaintiff's performance. It merely makes the following statements

regarding Plaintiff's lack of accountability for the failure of Nova:

> In no way do we at Warburg, Pincus hold you accountable for
> [Nova's] failure; I don't know what more you could have done that
> would have pulled it out of the fire. You were certainly prompt in
> bringing the viability issues to the attention of the board, and made
> a promising start in redirecting the company. However, no amount
> of leadership could have overcome the full range of technical
> deficiencies that emerged.

(Complaint Exhibit B.)

Plaintiff next asserts that defendant Fillo "dismissed Gluck's claim that Nova had

been materially misrepresented to Warburg, Fillo, and Gluck." (Complaint ¶ 37.) But that

statement regarding whether a third party made a material misrepresentation is not a statement of

fact "of or concerning" Plaintiff so as to give rise to a claim. See Ellis v. Safety Ins. Co., 41

Mass. App. Ct. 630, 636, 672 N.E.2d 979, 984 (1996) (finding "of or concerning" element

satisfied with respect only to plaintiff named in statement but not with respect to plaintiffs to

whom there was "no reference" and no evidence that the statement "was intended to refer to

them or that [the listener] understood" it to refer to them). Accordingly, even in the absence of a

heightened pleading standard, Plaintiff's allegations fail to set forth an actionable defamatory

statement.

### B.    The Tortious Interference with Advantageous Relations Claim Should Be Dismissed.

Count II alleges that "defendants Fillo and Warburg tortiously interfered with

Gluck's advantageous relationships within the McKinsey community by engaging in

misrepresentation of what had actually happened at Nova and by acting maliciously toward Gluck." (Complaint ¶ 50). As with the defamation claim, the tortious interference claim fails both on statute of limitations grounds and for failure to state a claim.

> ### 1. The Statute of Limitations for Plaintiff's Tortious Interference Claim Has Expired.

An action for tortious interference with advantageous relations must be brought within three years after the cause of action accrues. G.L. c. 260, § 2A. For statute of limitations purposes, an action accrues when the plaintiff is put on notice of his injury. Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 233, 736 N.E.2d 434, 442 (2000). As set forth in Section II.A.1. above, Plaintiff has clearly been on notice of his alleged injury -- "his inability ever again to secure a suitable position" -- at least since 1986. (Complaint ¶ 36.) Accordingly, the statute of limitations on this claim expired long ago.

> ### 2. The Tortious Interference Claim Fails Because Plaintiff Has Not Alleged Defendants' Knowledge of the Business Relationship, Improper Motive or Improper Means, or an Advantageous Relationship which Could Form a Basis for this Claim.

To state a claim for tortious interference with advantageous relations, Plaintiff must demonstrate: (i) the existence of a business relationship from which Plaintiff might have benefited; (ii) that Defendants knew of the relationship; (iii) that the Defendants intentionally interfered with the relationship for an improper purpose or by improper means; and (iv) that Plaintiff was damaged thereby. Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 38, 815 N.E.2d 241, 245 (2004). Here, the Complaint fails to allege at least three of the elements of a tortious interference claim.

First, the Complaint does not allege that Defendants were aware of the business relationship from which Plaintiff claims he would have benefited. Specifically, Plaintiff does not

allege that the Defendants were aware that Plaintiff expected to secure employment from the

network of alumni and active firm members of McKinsey.

Second, Plaintiff has made no substantive allegations that Defendants acted with

an "improper purpose or by improper means." Id. He merely alleges that statements were made

to two persons about Plaintiff's work performance at Nova. Persons in a supervisory role,

however, cannot be held liable for tortious interference unless they acted with malice. Steranko

v. Inforex, Inc., 5 Mass. App. Ct. 253, 272-73, 362 N.E.2d 222, 235 (1977); see also Conway v.

Smerling, 37 Mass. App. Ct. 1, 7-8, 635 N.E.2d 268, 273 (1994) ("In response to an inquiry

about a former employee, [the president of the company] had a privilege, if not a duty, to speak

the truth even if the disclosure of the facts might negatively affect the subject's job prospects.")

(citation omitted); Clement v. Rev-Lyn Contr. Co., 40 Mass. App. Ct. 322, 325, 663 N.E.2d

1235, 1237 (stating that to hold a supervisor liable for tortious interference a plaintiff must prove

the supervisor "acted out of malevolence, that is, with actual malice") (internal quotations and

citation omitted), review denied, 422 Mass. 1109, 665 N.E.2d 1003 (1996). Here, it is alleged

that Warburg and Fillo recruited Plaintiff to be Nova's president and chief operating officer and

that Fillo oversaw Warburg's investment in Nova. Under these circumstances, to overcome the

privilege, Plaintiff must allege that Defendants "acted out of malevolence, that is, with actual

malice," which means that the action was taken against Plaintiff for "a spiteful, malignant

purpose, unrelated to the legitimate corporate interest." Boothby v. Texon, Inc., 414 Mass. 468,

487, 608 N.E.2d 1028, 1040 (1993) (internal quotations and citations omitted). There are no

such allegations made.

Finally, Plaintiff has not identified a relationship which can form the basis for this

claim. The advantageous relationship supposedly interfered with here is a network of alumni

and active firm members of McKinsey. Plaintiff does not, however, allege that he lost any

specific employment opportunity or commercial transaction. Instead he pleads that Defendants'

conduct hurt his chances for consideration for unspecified and unknown potential opportunities

which might arise as a result of being known to persons within the McKinsey network. Further,

Plaintiff does not allege that he expected to benefit directly from the McKinsey alumni network

itself, but rather that he hoped the network would enable him to gain employment from third

parties. Such unspecific and speculative potential opportunities will not support a claim for

tortious interference with advantageous relations. The tort does not encompass relationships

such as the McKinsey alumni network that are of "nonpecuniary professional or social benefit."

Ratner v. Noble, 35 Mass. App. Ct. 137, 139, 617 N.E.2d 649, 650 (1993) (rejecting language

from earlier case suggesting that the tort might encompass such relationships), review denied,

416 Mass. 1105, 621 N.E.2d 685 (1993). "[T]he essence of the tort is damage to a business

relationship or contemplated contract of economic benefit" as opposed to harm to one's

"professional reputation." Id. at 138, 617 N.E. 2d at 650.

     For these reasons, count II fails to state a claim.

### C.    The Breach of Contract Claim Should Be Dismissed.

     Count III alleges breach of contract. Relying on Fillo's July 2 Letter and on

Plaintiff's own July 8 Letter in response, Plaintiff alleges that the Letters constitute an

agreement, and that the agreement was breached by Defendants. This count, like the others, fails

both on statute of limitations grounds and because it fails to allege the elements of a breach of

contract claim.

### 1.    *The Statute of Limitations for Plaintiff's Contract Claim Has Expired.*

     The statute of limitations for breach of contract is six years and runs from the time that

Plaintiff knew or should have known of the cause of action. G.L. c. 260, § 2. If, as Plaintiff

alleges, there was an agreement and Fillo violated it in discussions with Ron Daniel and Fred

Gluck, Plaintiff has been on notice of the breach for more than six years.  He has known for

more than 19 years since receiving the July 2 Letter that he could not get a job.  He cannot

reasonably excuse his inaction as he attempts to do by alleging that he just assumed that the

reason his job prospects did not improve was that the Letter was "too little, too late."  (Complaint

¶ 36.)  The statute is not tolled by such conduct clearly evidencing a lack of "reasonable

diligence."  Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass. App. Ct.

215, 222, 560 N.E.2d 122, 126 (1990).

### 2.  *Plaintiff's Contract Claim is Deficient.*

To state a claim for breach of contract, a plaintiff must demonstrate the existence of a

valid contract by showing "a bargained-for exchange -- offer, acceptance, and consideration."

Quinn v. State Ethics Comm'n, 401 Mass. 210, 216, 516 N.E.2d 124, 127 (1987).  Plaintiff has

simply not alleged those elements.

Plaintiff's depiction of the July 2 Letter as the "'Set the Record Straight' Letter

Agreement" resulting from a "settlement process" does not in any way change the actual

character of the document.  (Complaint ¶¶ 35-36, Exhibit B.)  It does not contain any promises

by any of the Defendants.  It is nothing more than a letter from Fillo to Gluck, containing a few

statements of fact and opinion.  Indeed, the July 8 Letter makes clear that the July 2 Letter was

simply a "gracious gesture" on the part of Fillo.  Nor does the July 2 Letter or the July 8 Letter

indicate that Defendants received any consideration for sending the July 2 Letter.  The July 8

Letter in fact makes clear that no consideration was exchanged for the statements in the July 2

Letter.  The July 8 Letter explicitly confirms that no actual release was required or given for

those statements.

Because Plaintiff has not alleged a valid contract, his breach of contract claim must be dismissed.

**D.    The Fraudulent Inducement Claim Should Also Be Dismissed.**

Count IV alleges somewhat mystifyingly that "defendants fraudulently induced Gluck to agree to the 'Set the Record Straight' Letter Agreement and not to bring a lawsuit." Once again, Plaintiff's allegations are untimely and fail to state a claim upon which relief can be granted.

### 1.    *The Statute of Limitations on the Fraudulent Inducement Claim Has Expired.*

The statute of limitations in Massachusetts for fraudulent inducement is three years from "the time that the plaintiff learns or reasonably should have learned of the misrepresentation." Kent v. Dupree, 13 Mass. App. Ct. 44, 47, 429 N.E.2d 1041, 1043 (1982) (citing G.L. c. 260, § 2A). As the alleged inducement in this instance was in 1986, the statute of limitations has expired and the claim should be dismissed.

### 2.    *Plaintiff Has Failed to State a Claim for Fraudulent Inducement.*

"To establish fraud in the inducement, and thereby be relieved of the effect of [a contract]," a plaintiff is "required to establish the elements of common law deceit." Commerce Bank & Trust Co. v. Hayeck, 46 Mass. App. Ct. 687, 692, 709 N.E.2d 1122, 1126 (citation omitted), review denied, 430 Mass. 1104, 714 N.E.2d 826 (1999). "To sustain a claim of misrepresentation, a plaintiff must show a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." Boyle v. Douglass Dynamics, LLC, 292 F. Supp. 2d 198, 214 (D. Mass 2003) (quoting Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77, 575 N.E.2d 70, 74 (1991)), aff'd, 99 Fed. Appx. 243, 2004 WL 1171370 (1st Cir. May 25, 2004). Moreover, "plaintiff must also

show that the defendants made the false representation either knowing that the statement was false or with reckless disregard for the truth." Vision Graphics, Inc. v. E.I. DuPont De Nemours & Co., 41 F. Supp. 2d 93, 100 (D. Mass. 1999). Furthermore, because this claim sounds in fraud, it is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), and the elements must be pleaded with particularity. See Brisamar, Inc. v. Enright House, Ltd., No. Civ. 04-11119(SEC), 2005 WL 1215796, at *4 (D.P.R. May 20, 2005) (unpublished op.).

Plaintiff has not alleged that the July 2 Letter contained any false statement of material fact. Instead, he seems to claim that the letter contained a promise of some type and that Defendants did not fulfill that promise. As explained above, however, the letter contains no promise, and, even if it did, such a promise is not a statement of material fact which can support a fraudulent inducement claim.

Moreover, Plaintiff has not alleged that any statement in the July 2 Letter was made by Defendants with knowledge of its falsity. Even if the letter could somehow be construed as setting forth a material fact, there is simply no allegation that Defendants had knowledge of its falsity.

Finally, the only "detriment" alleged by Plaintiff in support of his claim for fraudulent inducement is that Plaintiff was induced not to sue Defendants. The claim thus appears to be nothing more than an additional argument for the tolling of the statute of limitations. While Massachusetts law does allow such "[e]quitable tolling," it does so "only sparingly." Shafnacker v. Raymond James & Assoc., Inc., 425 Mass. 724, 728, 683 N.E.2d 662, 665 (1997) (citation omitted). To support such a claim, Plaintiff would have to allege that the Defendants "concealed the existence of a cause of action through some affirmative act with intent to deceive." Breneman v. Wolfsen, No. 03-P-234, 2004 WL 2902454, at *4 (Mass. App.

-19-

Ct. Dec. 15, 2004) (unpublished op.) (internal citations and quotations omitted), <u>review</u> <u>denied</u>, 443 Mass. 1102, 822 N.E.2d 303 (2005). Nothing in the Complaint suggests that the July 2 Letter was provided in order to conceal the existence of a cause of action. Furthermore, "[e]ven in cases of fraud, if the plaintiff has either actual knowledge of his claim or the full means of detecting the fraud, the limitations period is not tolled." <u>Id.</u> (internal citations and quotations omitted). Thus, Plaintiff's notice of the potential claims and failure to investigate them overcome any otherwise available tolling of the statute of limitations.

Plaintiff's claim for fraudulent inducement should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Stephen W. Fillo, Warburg Pincus LLC, Warburg Pincus Capital Corp. and Warburg Pincus & Co. request that this Court grant their Motion to Dismiss the Complaint with prejudice and grant such other and further relief as this Court deems just and proper.

<div style="margin-left:40%">

STEPHEN W. FILLO,
WARBURG PINCUS LLC,
WARBURG PINCUS CAPITAL CORP,
and WARBURG PINCUS & CO.,
By their attorneys,

/s/ Matthew C. Moschella
Robert J. Muldoon, Jr. BBO #359480
Matthew C. Moschella BBO #653885
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000

Of Counsel:
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

</div>

Dated:    September 30, 2005

00085098.DOC /

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a true copy of this document upon all attorneys of record by <u>hand</u>/mail.

Date: <u>9/30/05</u>                                    <u>Matthew C. Moschella</u>

00085098.DOC /